UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TRACY LaMONICA, individually and as Heir to, and as Special Administrator of the ESTATE OF PHYLLIS ANN WYANT, Deceased,<br><br>                           Plaintiff(s),<br><br>        v.<br><br>THE HEIGHTS OF SUMMERLIN, LLC.,<br><br>                           Defendant(s). | Case No. 2:21-CV-1040 JCM (DJA)<br><br>ORDER |

Presently before the court is plaintiff Tracy LaMonica's, individually, as heir to, and as Special Administrator on behalf of the Estate of Phyllis Ann Wyant's ("LaMonica") motion to remand. (ECF No. 7). Defendant Heights of Summerlin, LLC d/b/a The Heights of Summerlin filed a response, (ECF No. 14), to which LaMonica replied (ECF No. 15).

Also before the court is Heights of Summerlin's motion to dismiss. (ECF No. 5). LaMonica filed a response (ECF No. 9) to which Heights of Summerlin replied (ECF No. 13).

**I.     Background**

The instant action arises from state law tort claims alleging that Heights of Summerlin, a skilled nursing facility, acted negligently while caring for Phyllis Ann Wyant ("decedent"). (ECF No. 1-2). LaMonica originally filed her complaint in Nevada state court (*Id.*), after which Heights of Summerlin timely removed the matter to this court. (ECF No. 1). LaMonica now moves to remand. (ECF No. 7).

In the complaint, LaMonica alleges that Heights of Summerlin was negligent in its care for the decedent by failing to properly staff, adequately train, or responsibly supervise nurses to

**James C. Mahan**
**U.S. District Judge**

provide proper medical care; failing to follow standard and/or prudent practices or protocols, including procedures and precautions in response to the COVID-19 pandemic; and failing to inform decedent's family, including her daughter, LaMonica, that high rates of COVID-19 were present at Heights of Summerlin during the relevant time period. (ECF No. 1-2 at 3–4). LaMonica alleges that such failures were a "substantial causative factor, and concurrent proximate cause, in the legal and proximate cause of Ms. Wyant's death." (*Id.* ¶ 17).

## II. Legal Standard

### A. Removal and Remand

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

Because the court's jurisdiction is limited by the constitution and 28 U.S.C. §§ 1331, 1332, "[t]he threshold requirement for removal under 28 U.S.C. § 1441 is a finding that the complaint contains a cause of action that is within the original jurisdiction of the district court." *Ansley v. Ameriquest Mortg. Co.*, 340 F.3d 858, 861 (9th Cir. 2003) (quoting *Toumajian v. Frailey,* 135 F.3d 648, 653 (9th Cir. 1998)). Thus, "it is to be presumed that a cause lies outside the limited jurisdiction of the federal courts and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (quoting *Abrego Abrego v. Dow Chem Co.*, 443 F.3d 676, 684 (9th Cir. 2009).

Upon notice of removability, a defendant has thirty days to remove a case to federal court once he knows or should have known that the case was removable. *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006) (citing 28 U.S.C. § 1446(b)(2)). A plaintiff may challenge removal by timely filing a motion to remand. 28 U.S.C. § 1447(c).

. . .

**James C. Mahan**
**U.S. District Judge**

On a motion to remand, the removing defendant must overcome the "strong presumption against removal jurisdiction" and establish that removal is proper. *Hunter*, 582 F.3d at 1042 (quoting *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1992) (per curiam)). Due to this strong presumption against removal jurisdiction, the court resolves all ambiguity in favor of remand to state court. *Id.*

B. Preemption and Federal Question Jurisdiction

The "well-pleaded complaint rule" governs federal question jurisdiction. This rule provides that district courts can exercise jurisdiction under 28 U.S.C. § 1331 only when a federal question appears on the face of a well-pleaded complaint. *See, e.g.*, *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Thus, a plaintiff "may avoid federal jurisdiction by exclusive reliance on state law." *Id*. Moreover, "an anticipated or actual federal defense generally does not qualify a case for removal[.]" *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999).

The well-pleaded complaint rule, however, is not without exception. The "complete preemption doctrine" allows district courts to exercise federal question jurisdiction over state law claims when a federal statute completely preempts the relevant state law. *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1107 (9th Cir. 2000) (citation omitted). Courts consider the factual allegations in the complaint and the petition of removal to determine whether federal law completely preempts a state law claim. *Schroeder v. Trans World Airlines, Inc.*, 702 F.2d 189, 191 (9th Cir. 1983).

Ordinary preemption is a defense and does not support Article III subject matter jurisdiction, a prerequisite for removal. *See Merrell Dow Pharmaceuticals v. Thompson*, 478 U.S. 804 (1986). In contrast, complete preemption is "really a jurisdictional rather than a preemption doctrine, [as it] confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim." *Marin General Hosp. v. Modesto & Empire Traction Co*., 581 F.3d 941, 945 (9th Cir. 2009) (quoting *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund,* 538 F.3d 594, 596 (7th Cir. 2008) (internal quotations omitted). Complete preemption is "rare." *Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1056 (9th Cir. 2008).

**James C. Mahan**
**U.S. District Judge**

Congressional intent is the "ultimate touchstone" of any preemption analysis, express or implied. *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 96, 98 (1992). In determining Congressional intent to preempt, a court must "begin with the language employed by Congress and the assumption that the ordinary meaning of the language accurately expresses the legislative purpose." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992). "The first and most important step in construing a statute is the statutory language itself." *Royal Foods Co., Inc. v. RJR Holdings, Inc.*, 252 F.3d 1102, 1106 (9th Cir. 2001) (citing *Chevron USA v. Natural Res. Def. Council*, 467 U.S. 837, 842–44 (1984)).

### III. Discussion

#### A. Preemption and the PREP Act

The primary issue here is whether a federal question appears on the face of LaMonica's well-pleaded complaint under the Public Readiness and Emergency Preparedness Act ("PREP").[1] LaMonica's claims primarily derive from state law and allege, *inter alia*, that Heights of Summerlin acted negligently in failing to establish and follow proper COVID-19 safety protocols and procedures. (ECF No. 15 at 5). Heights of Summerlin argues that this court's jurisdiction is proper because the PREP Act "completely preempts" all state tort claims against "covered persons" using "covered countermeasures." (ECF No. 14 at 2).

---

[1] The Public Readiness and Emergency Preparedness Act ("PREP") was enacted on December 30, 2005, as Public Law 109-148, Division C, Section 2. The Act lies dormant until invoked by the Secretary of the Department of Health and Human Services ("HHS Secretary"), who is authorized to issue a declaration that a public-health emergency constitutes a health threat and accordingly publish the declaration in the Federal Register recommending certain "covered countermeasures." Once the HHS Secretary issues the declaration, the statute provides immunity to certain individuals and entities ("Covered Persons") against any claim of loss caused by, arising out of, relating to, or resulting from the **manufacture, distribution, administration, or use of medical countermeasures** ("Covered Countermeasures"). The statute provides an exception for this statutory immunity for claims involving "willful misconduct." 42 U.S.C. § 247d-6d(d)(1). Under the act, a declaration may be amended as circumstances warrant. *Id.* § 247d-6d(b)(4). The primary thrust of the PREP act with respect to liability protections is as follows:

> Subject to the other provisions of this section, **a covered person shall be immune from suit and liability** under Federal and State law with respect to all claims **for loss** caused by, arising out of, relating to, or **resulting from the administration to or the use by an individual of a covered countermeasure** if a declaration under subsection (b) has been issued with respect to such countermeasure.

42 U.S.C. § 247d-6d(a)(1) (emphasis added).

**James C. Mahan**
**U.S. District Judge**

- 4 -

*1. Background of the PREP Act*

As background, in March 2020, the secretary of the Department of Health and Human Services ("HHS secretary") issued a declaration under the PREP Act, declaring that COVID-19 is a public-health emergency. *See* Declaration Under the PREP Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198, 15,201 (Mar. 17, 2020). The secretary recommended a series of covered countermeasures that included drugs, devices, and products used by covered persons "to treat, diagnose, cure, prevent, or mitigate COVID-19." *Id.* at 15,202. The secretary has since amended the declaration ten times. *See* Tenth Amendment to Declaration Under the PREP Act for Medical Countermeasures Against COVID-19, 87 Fed. Reg. 51,982 (Jan. 07, 2022). The HHS secretary has also issued advisory opinions and guidance letters on various issues related to the declaration.

A "covered countermeasure" is defined by statute as (A) "a qualified pandemic or epidemic **product**; (B) a **security countermeasure**; (C) a **drug**, **biological product**, or **device** that is authorized for emergency use in accordance with…the Federal Food, Drug, and Cosmetic Act; or (D) a **respiratory protective device** that is approved by the National Institute for Occupational Safety and Health…and that the Secretary determines to be a priority for use during a public health emergency declared under section 247d of this title." 42 U.S.C. § 247d-6d (emphasis added).

A "covered person" is also defined by statute as manufacturers, distributors, program planners, and qualified persons who prescribe, administer, or dispense such countermeasures, or an official, agent, or employee of a such a person. *Id.* § 247d(i).

*2. LaMonica's allegations do not implicate the PREP Act*

Even assuming that Heights of Summerlin is a "covered person" under the statute and that the PREP Act enjoys "complete preemption" status,[2] it is immaterial since LaMonica's state law tort claims do not include the alleged use of any "covered countermeasures" as defined under the Act—nor does Heights of Summerlin point to any such countermeasures in LaMonica's complaint. (ECF No. 1-2).

---

[2] The court does not comment on these points since they are unnecessary for the holding.

**James C. Mahan**
**U.S. District Judge**

- 5 -

Instead, Heights of Summerlin contends that LaMonica uses vague, "artful pleading" as "both a sword and shield" to avoid federal jurisdiction under the PREP Act. (ECF No. 14 at 19). It argues that since LaMonica's claims hinge on the alleged failure to appropriately enforce COVID-19 safety protocols and procedures, the claims necessarily implicate the use (or non-use) of covered countermeasures—thus "axiomatically" triggering federal jurisdiction under the PREP Act. (*Id.*).

The court disagrees and finds Heights of Summerlin's argument overbroad. The PREP Act's purpose is to shield entities from liability stemming from their administration of a covered countermeasure like a vaccine, not to shield them from liability for traditional state-law claims merely because the alleged actions occurred during a public health emergency.

In fact, all of LaMonica's allegations in the complaint center around Heights of Summerlin's general negligence of expected medical care for LaMonica's mother—including failure to properly staff, train, and supervise nurses, failure to follow standard and/or prudent practices or protocols, and failure to inform decedent's family that high rates of COVID-19 were present at the facility. (ECF No. 1-2 at 3–4). To be sure, LaMonica is also alleging that her mother died of complications arising out of contracting COVID-19, but to claim that these general allegations of nonfeasance in response to the pandemic invoke federal jurisdiction under the PREP Act brings too much to bear on the statute.

In further support of its contention that federal jurisdiction exists, Heights of Summerlin points to an advisory opinion by HHS's office of general counsel ("OGC"), which claims that the PREP Act is a "complete preemption statute" and that even *non-use* of covered countermeasures triggers the PREP Act's complete preemption regime. *See* 85 Fed. Reg. 21-01 (January 8, 2021) ("Advisory Opinion 21-01").

Heights of Summerlin conveniently omits the explicit disclaimer at the end of the advisory opinion, indicating that it "does not have the force or effect of law," *Id.* Consequently, HHS advisory opinions do not enjoy *Chevron* deference and are not binding on this court. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

. . .

**James C. Mahan**
**U.S. District Judge**

- 6 -

The court finds the Third Circuit's analysis in *Maglioli v. Alliance HC Holdings, LLC* persuasive on this point. 16 F.4th 393 (3d Cir. 2021). There, the court reasoned that Congress delegated to HHS the authority to declare public health emergencies under the PREP Act, but not to interpret the scope of federal-courts' jurisdiction. *Id.* at 403–04. While agency determinations within the scope of delegated authority are entitled to deference, "it is fundamental that an agency may not bootstrap itself into an area in which it has no jurisdiction." *Adams Fruit Co. v. Barrett*, 494 U.S. 638, 650 (1990) (holding that a similar statutory regime "[did] not empower the Secretary to regulate the scope of the judicial power vested by the statute."); *accord Maglioli*, 16 F.4th at 403.

The court therefore joins "nearly every federal district court" in rejecting similar creative attempts to manufacture federal-court jurisdiction under the auspices of the PREP Act.[3] *Maglioli*, 16 F.4th 393 (collecting cases nationwide).

### B.  Federal Officer Jurisdiction

Heights of Summerlin does not rebut LaMonica's argument regarding lack of federal officer jurisdiction under 28 U.S.C. § 1442(a)(1), but this argument is equally unavailing. Heights of Summerlin does not operate under "specific direction of a federal officer" by virtue of complying with federal law under the PREP Act. It is well established that a private firm's compliance (or noncompliance) with federal laws and regulations does not by itself fall within the scope of the phrase "acting under" a federal "official." *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 143 (2007). Otherwise, a "contrary determination would expand the scope of the statute considerably, potentially bringing within its scope state-court actions filed against private firms in many highly regulated industries." *Id*.

. . .

. . .

---

[3] This district alone has remanded four similar cases in recent months where defendants attempted to remove based on the PREP Act or federal-officer removal statute. *See Huntingon et al v. Yate Holdings, LLC,* No. 2:21-cv-01809-JCM-EJY (D. Nev. Feb. 18, 2022); *Shankle v. Heights of Summerlin, LLC*, 2021 WL 5763553 (D. Nev. Dec. 1, 2021) (collecting cases from this circuit); *Ostrander v. Heights of Summerlin, LLC*, 2021 WL 5763554 (D. Nev. Dec. 1, 2021); *Smith v. Heights of Summerlin, LLC,* 2021 WL 5763556 (D. Nev. Dec. 1, 2021).

**James C. Mahan**
**U.S. District Judge**

**IV.    Conclusion**

Accordingly, and pursuant to the foregoing,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff LaMonica's motion to remand (ECF No. 7) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that Heights of Summerlin's motion to dismiss (ECF No. 5) be, and the same hereby is, DENIED as moot.

The clerk of court is directed to REMAND this case back to the Eighth Judicial District Court for Clark County, Nevada; Case Number A-21-833091-C and CLOSE THIS CASE.

DATED February 23, 2022.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**

- 8 -